ASSOCIATED GENERAL CONTRACTORS OF NORTH DAKOTA, Plaintiff-Appellant,

v.

LOCAL NO. 580 OF LABORERS INTERNATIONAL UNION OF NORTH AMERICA, Bricklayers, Masons and Plasterers International Union of America, Local No. 4 United Brotherhood of Carpenters and Joiners of America, Local Union No. 1091, Iron Workers Local Union No. 793, International Union of Operating Engineers, Local 49 and Teamsters Union Locals 74, 116, 123, and 581, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants-Appellees.

Civ. No. 9527.

Supreme Court of North Dakota.

April 17, 1979.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiff and appellant; argued by John D. Kelly, Fargo.

Sherman, Dunn, Cohen & Leifer, Washington, D.C., John T. Schneider, Schneider & Hilden, and Lanier, Knox & Olson, Fargo, for defendants and appellees; argued by Elihu I. Leifer, Washington, D.C.

PAULSON, Justice.

This is an appeal by Associated General Contractors of North Dakota ["AGC"] from the judgment of the Burleigh County District Court dismissing AGC's breach of con-

1. Local Union No. 580 of Laborers Intl. Union of North America ["Laborers"]; Local Union No. 4 of the Bricklayers, Masons, and Plasterers Intl. Union of America ["Bricklayers"]; Local Union No. 1091 of the United Brotherhood of Carpenters and Joiners of America ["Carpenters"]; Local Union No. 793 of the Intl. Ass'n of Bridge, Structural and Ornamental Iron Workers ["Iron Workers"]; Local Union No. 49 of Intl. Union of Operating Engineers ["Operating Engineers"]; and Locals Nos. 74, 116, 123, and 581 of Intl. Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ["Teamsters"].

tract action against several local unions ["Local Unions"].[1] AGC, a contractors' association that serves as the collective bargaining agent for member contractors, brought suit against the Local Unions in district court for allegedly violating their collective bargaining agreement with AGC by entering into conflicting employment contracts on the Coyote # 1 Fossil Fuel Power Plant ["Coyote # 1"] in Mercer County. AGC's prayer for relief included a request that the Local Unions be enjoined from subscribing to or operating under the terms of the allegedly conflicting labor agreements on the Coyote # 1 project. Following a hearing on AGC's request for a temporary injunction and a subsequent hearing on the Local Unions' motion to dismiss, the district court granted the Local Unions' motion to dismiss AGC's complaint and AGC has appealed.

Before the present lawsuit was commenced, AGC and the Local Unions negotiated and entered into certain local labor agreements ["Local Agreements"] which were to apply to construction projects located within a certain area which includes Mercer County, North Dakota. Approximately 139 contractor-members of AGC subscribed to the various agreements with the Local Unions. The agreements with the individual Local Unions contained provisions that prohibited both employer-contractors and the Local Unions from entering into agreements that conflict with the Local Agreements on building projects within the jurisdictional area of the Local Agreements.

After the Local Agreements were in effect, Bechtel Power Corporation ["Bechtel"], one of the four main contractors on Coyote # 1, began construction on the Coyote # 1 project in Mercer County. At least two AGC members who had signed the Local Agreements obtained subcontracts on the project and employed union workers under the terms of the Local Agreements.

After construction had begun on Coyote # 1 the Local Agreements were abandoned and union workers were then employed directly by Bechtel under a National Stabilization Agreement ["Stabilization Agreement"] rather than by the subcontractors. The Stabilization Agreement was entered into between Bechtel and the other major Coyote # 1 contractors and various international unions. Neither AGC nor the Local Unions were parties to this agreement.

Under the Stabilization Agreement, workers are generally paid higher wages and benefits than they would have received under the Local Agreements. However, certain subsistence benefits under the Stabilization Agreement are less desirable for some workers than they are under the Local Agreements. The higher wages paid under the Stabilization Agreement were believed to be necessary in order to induce skilled workers to work on the Coyote # 1 project which is located approximately seventy-five miles from the nearest major population center. In return for the generally higher wages, union workers relinquished certain rights regarding strikes and grievances. In essence, Bechtel paid higher wages to obtain skilled labor and to avoid labor disputes during construction. The higher labor costs under the Stabilization Agreement are paid by Bechtel, not the subcontractor, to the extent that they exceed labor costs under the Local Agreements.

The Local Unions and the two AGC members who are subcontractors on Coyote # 1 began operating under the Stabilization Agreement after it went into effect. Testimony at the April 17, 1978, hearing indicated that the two subcontractors were obligated to operate under the Stabilization Agreement in order to obtain contracts on the project.

On January 25, 1978, AGC commenced this breach of contract action against the Local Unions and requested a preliminary injunction to prevent the Local Unions from operating under the conflicting Stabilization Agreement. The Local Unions removed the case to the United States District Court but the case was remanded to the Burleigh County District Court on March 22, 1978. The Local Unions again

removed the case to the United States District Court; the case was again remanded to the Burleigh County District Court; and a hearing on a preliminary injunction was scheduled for April 17, 1978.

On April 17, 1978, the Local Unions filed an alternative motion to dismiss, or to strike, or for summary judgment. At the April 17 hearing the parties agreed that the hearing would not be on the merits but would involve only AGC's motion for a temporary injunction. Both sides presented testimony of witnesses and exhibits at the hearing. No decision on AGC's request for a temporary injunction was made at the conclusion of the April 17 hearing. A subsequent hearing was scheduled for May 15, 1978, to consider the Local Unions' motion to dismiss, or to strike, or for summary judgment.

At the May 15, 1978, hearing both sides declined to present additional evidence. They argued the Local Unions' motion to dismiss, or to strike, or for summary judgment, based upon the briefs, depositions, and affidavits. Both parties referred to the testimony that was presented at the April 17 hearing.

On May 16, 1978, the district court issued a Memorandum Opinion dismissing AGC's complaint. Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment were entered on June 1, 1978, and AGC has appealed.

The basis upon which the district court granted the Local Unions' motion to dismiss is found in the following excerpt from the court's memorandum decision:

"AGC, it must be remembered, is bringing this lawsuit in a representative capacity on behalf of its members. AGC as an entity has no pecuniary interest in the outcome of the proceeding. It suffers no damage or harm as an entity by reason of the activities of the local unions. Some of the members of AGC may not have signed the local agreements, and these members certainly have no direct interest in the outcome of the proceeding. Other contractors who may have signed the agreements are not involved in the project in question, so they likewise have no direct stake in the outcome of the proceeding. The entities which do have a real interest in the proceeding are the subcontractors involved in the project who signed the local agreements, but they are not parties.

"I think, therefore, that this action has not been brought by the real party in interest. This fact does not justify dismissal of the action per se, since time should be allowed to cure the objection by substitution of the real parties in interest, namely, the subcontractors in question. See: Rule 17(a), N.D.R.Civ.P."

In summary, the district court determined that AGC had no pecuniary interest in the outcome of the breach of contract action; that AGC was not the real party in interest; that AGC members who had not signed the Local Agreements were not real parties in interest; that AGC members who had signed the Local Agreements but were not involved with the Coyote # 1 project were not real parties in interest; and that AGC members who had signed the Local Agreements and were involved with the Coyote # 1 project were real parties in interest. The district court further determined that, even if the AGC members who worked on the Coyote # 1 project were substituted as the real parties in interest to comply with Rule 17(a), N.D.R.Civ.P., they would not be able to enforce the Local Agreements against the Local Unions because the AGC members were also violating the Local Agreements on the Coyote # 1 project.

The following issues have been raised on appeal:

(1) Did the district court err in denying AGC's motion for a temporary injunction?

(2) Did the district court err in determining that AGC was not the real party in interest pursuant to Rule 17(a), N.D.R.Civ.P.?

(3) Did the district court err in dismissing AGC's complaint with prejudice?

The granting or denying of a motion for an injunction is within the trial court's sound discretion, and its ruling will not be reversed on appeal unless it has abused its discretion. *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975); and *Keller v. Keller*, 158 N.W.2d 694 (N.D.1968). After reviewing the record, we conclude that the district court did not abuse its discretion in denying AGC's motion for a temporary injunction against the Local Unions.

The second issue involves the district court's determination that AGC was not entitled to bring the breach of contract action against the Local Unions because AGC was not the real party in interest pursuant to Rule 17(a), N.D.R.Civ.P. Therefore, we must consider Rule 17(a), N.D.R.Civ.P., which provides:

> "*Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest.* An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in its own name without joining with him the party for whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the State of North Dakota. *No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after the objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.*" [Emphasis added.]

The purpose of Rule 17(a), N.D.R. Civ.P., which requires that all actions be prosecuted in the name of the real party in interest, is to prevent a defendant from being subjected to double liability and the vexations of multiple suits. *E. E. Bach Millwork Co. v. Meisner & Co.*, 228 N.W.2d 904 (N.D.1975); *Newby v. Johnston's Fuel Liners, Inc.*, 122 N.W.2d 156 (N.D.1963). *See Kessler v. Board of Education of City of Fessenden*, 87 N.W.2d 743 (N.D.1958). If prosecution of a suit by the plaintiff would protect the defendant from further harassment or lawsuits by other claimants to the same dispute, then the plaintiff is the real party in interest. *See: Mason-Rust v. Laborers' International Union, Local 42*, 435 F.2d 939, 943–945 (8th Cir. 1970); *Archer v. Musick*, 147 Neb. 1018, 25 N.W.2d 908 (1947); and *Home Indemnity Co. v. State Bank of Fort Dodge*, 233 Iowa 103, 8 N.W.2d 757 (1943).

In *E. E. Bach Millwork Co., supra* 228 N.W.2d at 906, in paragraph 5 of the syllabus, this court held:

> "A real party in interest is one who has a real, actual, material, or substantial interest in the subject matter of the action."

*Van Sickle v. McArthur*, 110 N.W.2d 281 (N.D.1961); and *Froling v. Farrar*, 77 N.D. 639, 44 N.W.2d 763 (1950). As a general rule, a real party in interest "is a person for whose immediate benefit an action is prosecuted and who will control the recovery therein". *Van Sickle, supra* 110 N.W.2d at 281. A person is not a real party in interest if he has only a nominal, formal, or technical interest in the action. *Froling, supra* 44 N.W.2d at 765; 67A C.J.S. Parties § 18, pp. 673–674.

A perusal of the record suggests that AGC is not the real party in interest because it is not as directly interested in the alleged contract breaches by the Local Unions as are the member-contractors who signed the Local Agreements; the action is not being brought for AGC's immediate benefit; and AGC will not control the recovery in the action. However, in order to ultimately decide whether AGC is the real party in interest in this case, we must determine whether or not a suit by AGC will prevent the Local Unions from being subsequently sued on the same claim by AGC member-contractors who signed the Local Agreements.

AGC, which is the collective bargaining representative for its members, negotiated the various Local Agreements involved in this case with the Laborers, Bricklayers, Carpenters, Iron Workers, Operating Engineers, and Teamsters. Although AGC negotiated with the Local Unions on behalf of its members, AGC had no authority to bind any of its members to the contracts. After negotiations, AGC presented the various Local Agreements to its members. Each individual member then decided which of the Local Agreements, if any, it would sign and operate under. No valid contracts came into existence until the individual contractors signed the Local Agreements.

The main parties to the Local Agreements are the Local Unions and those individual contractors who signed them. According to basic contract law, the parties to a contract may enforce it by commencing a lawsuit.

■ The Local Agreements state that AGC "is a party to this agreement in a representative capacity and as an agent only". The Local Agreements further state "AGC is entitled to recognition in such capacity . . . to represent such employer parties . . . in aid, support or enforcement of the terms and provisions of this Agreement". AGC contends that these provisions entitle it to bring this lawsuit as the real party in interest. We find this contention to be without merit.

If AGC were the real party in interest, a breach of contract suit by it on behalf of its members who signed the Local Agreements would bar its individual members from bringing subsequent suits against the Local Unions on the same claim. We find no evidence that AGC's present lawsuit would bar the individual members of AGC from suing the Local Unions for breach of contract in the event that AGC's lawsuit failed. The individual members have not assigned their causes of action to AGC, nor have they done anything else which would prevent them from suing the Local Unions.

In a similar real party in interest case which involved Rule 17(a), of the Federal Rules of Civil Procedure,[2] a nonprofit milk producers association was found not to be the real party in interest in an anti-trust action brought by the association on behalf of its members because there was no showing that the individual members of the association had assigned their causes of action to the association. *South Carolina Council of Milk Producers, Inc. v. Newton,* 241 F.Supp. 259, 265 (E.D.S.C.1965). Consequently, the court found that the association had no authority to bring the action in a representative capacity. *See Farmers Coop Oil Co. v. Socony-Vacuum Oil Co.,* 133 F.2d 101 (8th Cir. 1942); *Northern California Monument Dealers Ass'n v. Interment Ass'n of California,* 120 F.Supp. 93 (S.D.Cal. 1954); and *Alabama Independent Service Station Ass'n v. Shell Petroleum Corp.,* 28 F.Supp. 386 (N.D.Ala.1939).

We conclude that AGC is not the real party in interest in the present action against the Local Unions. We hold that the district court did not err in dismissing the complaint because AGC was not the real party in interest pursuant to Rule 17(a), N.D.R.Civ.P.

The third issue considers whether the district court erred in dismissing AGC's action with prejudice. We must first determine the basis upon which the district court granted the Local Unions' motion to dismiss.

The Local Unions made an alternative motion to dismiss or to strike or for summary judgment, pursuant to Rules 12 and 56, N.D.R.Civ.P. The district court did not specifically state which Rule it used as a basis for the dismissal.

AGC contends that the district court's dismissal was in the nature of a summary judgment pursuant to Rule 56, N.D.R.Civ.P. If the dismissal were in the nature of a summary judgment, the dismissal could be reversed on appeal if any material fact was genuinely in issue.

**2.** Rule 17(a), F.R.Civ.P., is essentially identical to Rule 17(a), N.D.R.Civ.P.

The Local Unions contend that the dismissal was a dismissal on the merits pursuant to Rule 41(b), N.D.R.Civ.P. The Local Unions further contend that, because the dismissal was on the merits pursuant to Rule 41(b), the district court's Findings of Fact in the case are subject to the "clearly erroneous" provision of Rule 52(a), N.D.R. Civ.P., on appeal.

A review of the record indicates that the district court granted the dismissal pursuant to Rule 41(b), N.D.R.Civ.P.[3] The court included findings of fact and conclusions of law in its decision, and findings of fact are required for Rule 41(b) dismissals when judgment is rendered on the merits. See *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972). As stated in Rule 52(a), N.D.R. Civ.P., "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 . . . ." Therefore, we conclude that the district court granted the Local Unions' motion to dismiss under Rule 41(b), N.D.R.Civ.P.[4]

Under Rule 41(b), a motion to dismiss may be granted on the merits (1) when the plaintiff has shown no right to relief after he has completed the presentation of his evidence; (2) for failure of the plaintiff to prosecute his claim; or (3) for failure to comply with the rules or an order of the court. See 9 Wright & Miller, Fed.Prac. & Proc.: Civil § 2369 (1971), p. 191 [describing Rule 41(b), F.R.Civ.P.].[5]

The district court's dismissal of the action was not granted on the merits at the close of AGC's case because AGC had not yet completed its presentation of evidence in a trial on the merits. Neither was the dismissal granted for want of prosecution by AGC. The dismissal was granted because AGC had not complied with the Rules of Civil Procedure because it was not the real party in interest pursuant to Rule 17(a), N.D.R.Civ.P.

After the court determined that AGC was not the real party in interest, it concluded that AGC members who had signed the Local Agreements, but who were not working on the Coyote # 1 project were not real parties in interest, and could not be substituted as the plaintiffs in the action. The district court also determined that AGC members who had signed the Local Agreements and who were working on the Coyote # 1 project were real parties in interest, but that they could not enforce the Local Agreements because they were also violating them.

■ The district court's conclusions regarding the rights of individual AGC members are dicta, and are not binding on this court.[6] The dismissal of AGC's breach of contract action because it was not the real party in interest does not affect the rights of individual members of AGC or determine

---

3. *Rule 41(b) "Involuntary dismissal—Effect thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal

not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

4. A motion to dismiss need not specify that it is made under Rule 41. *Galdi v. Jones*, 141 F.2d 984 (2d Cir. 1944).

5. The pertinent provisions of Rule 41(b), F.R. Civ.P., are identical to those in Rule 41(b), N.D.R.Civ.P.

6. Even if the district court's determinations of the rights of individual AGC members were applicable, they are actually conclusions of law and would not be subject to the "clearly erroneous" rule of Rule 52(a), N.D.R.Civ.P. *See Slope County v. Consolidation Coal Co.*, 277 N.W.2d 124 (N.D.1979).

who is the real party in interest.[7] As we previously held in this opinion, AGC is not the real party in interest because a decision in this case would not bar its members from bringing similar suits. Therefore, we conclude that the dismissal of AGC's complaint was based solely on AGC's failure to comply with Rule 17(a), N.D.R.Civ.P., because it was not the real party in interest.

We now must determine whether or not the dismissal was properly granted with prejudice. An involuntary dismissal under Rule 41(b) may operate as an adjudication on the merits and be granted with prejudice. However, when a dismissal is granted based upon lack of jurisdiction or for failure to join a party under Rule 19, the dismissal does not operate as an adjudication on the merits and cannot be granted with prejudice. Rule 41(b), N.D.R.Civ.P.

In *Costello v. United States*, 365 U.S. 265, 286, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961), the United States Supreme Court quoted with approval from *Hughes v. United States*, 4 Wall. 232, 237, 18 L.Ed. 303 (1866), that if a " 'first suit was dismissed for a defect of pleadings, or parties . . . or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit' ". The United States Supreme Court in *Costello, supra* 365 U.S. at 286, 81 S.Ct. at 545 further stated that Rule 41(b) was not intended to change the common-law principle enunciated in *Hughes, supra*, "with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a precondition".

In *Douglas v. Douglas*, 238 Ga. 452, 233 S.E.2d 195, 197 (1977), the court adopted the following rationale from Wright & Miller's analysis of the *Costello* decision, found at 9 Wright & Miller, Fed.Prac. & Proc.: Civil § 2373, p. 237 (1971):

" 'In the light of the *Costello* decision, courts have recognized that Rule 41(b) does not apply in situations in which a case is dismissed because of some initial bar to reaching the merits of the plaintiff's claims, such as that plaintiffs failed to give bond for costs. On a similar principle it has been held that dismissals that do not reach the merits as for want of jurisdiction or because the action was premature or it was brought by the wrong plaintiff must be without prejudice.' "

In *Myers v. Westland Oil Co.*, 96 F.Supp. 667 (D.C.N.D.1949), the court held that a dismissal granted because a suit was not brought by the real party in interest does not operate as an adjudication on the merits and should be dismissed without prejudice.[8]

■ The district court's dismissal because AGC is not the real party in interest was a dismissal for lack of jurisdiction over the proper parties to the suit. *See Myers, supra* 96 F.Supp. at 670. Because the court's dismissal was for lack of jurisdiction, we conclude that it did not operate as an adjudication on the merits and it should have been granted without prejudice, pursuant to Rule 41(b), N.D.R.Civ.P.

Although the district court properly dismissed AGC's complaint because AGC was not the real party in interest, we hold that the district court erred in dismissing AGC's complaint with prejudice. We amend the dismissal to be without prejudice to the rights of a real party in interest to be substituted for AGC as the plaintiff in the action, pursuant to Rule 17(a), N.D.R.Civ.P., and we remand the case to the district court for the substitution of parties. If no real party in interest substitutes itself as the plaintiff in the action within a reasonable time, the district court should dismiss the action without prejudice to the rights of a

---

**7.** It appears that any AGC contractor who signed the Local Agreements may be a real party in interest. We do not suggest, however, that any AGC member who is a real party in interest would prevail on the merits.

**8.** In *Cleveland v. Mercantile Trust Co.*, 45 F.Supp. 205 (D.C.Md.1942), the court held that

if a plaintiff has no right to prosecute in her own name, the complaint should be dismissed with prejudice as to that plaintiff but without prejudice as to any proper claim made by a different party, if that party is properly authorized to prosecute the claim itself.

real party in interest who may institute a suit involving the same subject matter as this action at a later time. The decision of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and HODNY, District Judge, concur.

HODNY, District Judge, sitting in place of VANDE WALLE, J., disqualified.